73729. PRICE v. WRIGHT CONTRACTING COMPANY.
(359 SE2d 406)

BEASLEY, Judge.

This is the third appearance in this Court of this suit for personal injuries sustained by Hattie Price in a multi-vehicle collision on a bridge approach in Albany. See *Price v. Reeves Constr. Co.*, 181 Ga. App. 241 (351 SE2d 655) (1986); and *Price v. Dept. of Transp.*, 182 Ga. App. 353 (356 SE2d 45) (1987). The present appeal is from the grant of summary judgment to Wright Contracting Company, which paved the roadway and installed the guardrail, curb, gutter, and drainage systems. Plaintiff alleged Wright was jointly negligent with other defendants in the construction and maintenance of the road in an extremely hazardous condition causing her injuries and damage.

The complaint alleged that in the area where Price's vehicle left the road its condition was extremely hazardous because of the absence of guardrails or other obstructions to prevent vehicles from

leaving the road and going down the steep fill on which the bridge approach was situated. Plaintiff's supplemental and amended complaint further maintained that the driver of the vehicle which struck her automobile head-on lost control of his vehicle after going over a drop-off from the bridge to the road; that the vehicle then crossed through pooled water that was in a depressed area in the road, preventing the driver from regaining control; that the drop-off from the concrete bridge and the depressed area where the water pooled were caused by Wright's failure to adequately and properly perform the drainage work under its contract with the Georgia Department of Transportation; that the drop-off and depressed area existed from the time Wright completed its work until the collision; that Wright failed to adequately and properly perform the paving, drainage, and guardrail work so as to prevent the drop-off and/or to prevent water from pooling and/or to protect vehicles from descending the steep embankment.

In support of a motion for summary judgment, Wright submitted the affidavit of its assistant division manager at the time of the paving. He stated that Wright had contracted with DOT to perform the grading, paving, curb, gutter and guardrail work for the bridge approach but had no responsibility for placement of the fill for the approach; that Wright did not design any aspect of the bridge approach including the guardrail and did not have any input into the design of any aspect of the approach, as all design work including the plans and specifications for the project had been completed prior to solicitation of bids and was performed by engineers employed by DOT; that the company's sole responsibility on the project was to construct the bridge approach including the guardrail consistent with those plans and specifications; that Wright was not permitted to deviate in any respect from them and DOT inspected to insure no deviation; that the plans and specifications did not call for installation of median barriers or similar devices but did call for installation of approximately 800 feet of guardrail and four guardrail anchorages, which Wright constructed and placed accordingly; that there was absolutely nothing dangerous about its installation; that following final acceptance of the project the absence of median barriers and the amount, location, and construction of the guardrail could be readily observed by anyone using the approach; that Wright had absolutely no discretion in regard to construction, location or placement of the guardrail or the absence of median barriers; that Wright performed in exact accord with the contract with DOT; that following completion of Wright's work, DOT conducted a final construction inspection and accepted the company's work; that Wright has had no further involvement in the design, construction or maintenance of the bridge approach including the guardrail following DOT acceptance; that

Wright is a general contractor specializing in the construction of roads, bridges, airports and the grading and filling of land, but that the company has no expertise in the design of highways, roads, guardrails, median barriers or similar devices; and that by virtue of its experience in road construction at the time of letting bids for the project and performance of the job, employees of Wright were familiar with the use or lack of use of median barriers and installation of guardrail and anchorage on state highway projects such as this one and that the absence of median barriers and the amount of guardrail, its location and construction as specified in the project plans were consistent with the same on other similar highway projects in which the company had been involved. Wright also submitted the affidavit of the director of construction for DOT who confirmed the manager's statements.

Plaintiff countered with the affidavit of the wrecker driver coming to the scene of the collision. He stated that there was no guardrail along the shoulder of the road where Price's car went over; that the pavement of the roadway coming off the bridge was wet; that on earlier occasions he had seen rainwater pooling in a depressed area of the asphalt between where the Price wreck occurred and the concrete bridge, although on the day of the collision he was too busy to notice any pooling; that he had crossed the bridge many times before and recalled a substantial drop from the concrete bridge to the asphalt road pavement; that if a vehicle had problems, such as alignment or wheel balance, in its steering mechanism, the drop would be sufficient to cause the steering mechanism to shake; and that in his opinion, if there had been a guardrail along the shoulder, Price's car would not have left the road. Other affidavits echoed the wet condition of the road, the drop-off from the bridge to the road, and the opinion that Price's car would not have left the road if the guardrail had been present.

" '(I)t is a well established general rule that, where the work of an independent contractor is completed, turned over to, and accepted by the owner, the contractor is not liable to third persons for damages or injuries subsequently suffered by reason of the condition of the work, even though he was negligent in carrying out the contract, at least, if the defect is not hidden but readily observable on reasonable inspection.' [Cit.]" *Price v. Reeves Constr. Co.*, supra at 241.

Appellant relies on exceptions to the general rule, namely, " 'that the contractor is liable where the work is a nuisance per se, or inherently or intrinsically dangerous' " or " 'where the work done and turned over by him is so negligently defective as to be imminently dangerous to third persons. [Cits.]' " *PPG Indus. v. Genson*, 135 Ga. App. 248, 250 (2) (217 SE2d 479) (1975). The general rule is that " 'when the work is finished by [the contractor] and accepted by his

employer, the liability of the former generally ceases and the employer becomes answerable for damages which may thereafter accrue from the defective condition of the work. [Cits.]' [Cit.]" Id.

Price maintains that the approach was imminently dangerous to motorists and that it would not take an expert in road design to see the danger in the approach and that despite the apparent danger, Wright failed to place guardrails along the embankment or erect a median barrier along the length of the approach. The argument as to the need for guardrail is buttressed with a report from the National Cooperative Highway Research Program discussing recognized standards for highway construction and design. There is no indication in the record that such material was ever submitted to the trial court for its consideration. Moreover, there is no showing that such were the industry standards at the time of design and construction of the road. Furthermore, in light of the evidence submitted by the contractor, the report does not show that the amount of guardrail made this road inherently or intrinsically dangerous.

Price also contends that Wright knew or should have known that median barriers were necessary and that the absence of such barriers rendered the bridge approach imminently dangerous to motorists. A further point is that the contractor's failure to prevent the alleged drop-off and resulting pooled water rendered the approach intrinsically, inherently, and imminently dangerous to motorists. Her position is that her affidavits and photographs showing where her car left the road are sufficient circumstantial evidence to make an issue of whether or not the approach as constructed by Wright was imminently dangerous to third persons. She maintains that at the very least her evidence creates a jury question, citing *Powell v. Ledbetter Bros.*, 251 Ga. 649 (307 SE2d 663) (1983).

In *Powell*, plaintiffs brought suit against Polk County, DOT, Ledbetter Brothers, the general contractors, and four private industrial corporations seeking damages to real and personal property from flooding. The basis for the suit was the alleged negligent design, construction and maintenance of certain roads and bridges over a creek in such a manner as to impede and prevent the usual run-off of water down the creek during periods of heavy rainfall. Plaintiffs alleged that as a result of the negligence their properties were repeatedly flooded and damaged and that the damage was an unlawful taking and damaging of private property for public purposes without just and adequate compensation, an unlawful trespass, and a continuing nuisance. An amended and redrafted complaint further alleged that the projects as constructed were imminently and inherently dangerous to plaintiffs' properties. This court reversed the grant of summary judgment to the general contractors on the basis that the contractors' evidence failed to pierce the allegations in the redrafted complaint that

the construction was an inherently dangerous undertaking and that by the use of ordinary care the contractors should have foreseen the damage to plaintiffs' properties.

A very different situation prevails here. To begin with, while Price's pleadings did allege that the condition of the area where her vehicle left the road was extremely hazardous, she did not contend that Wright performed any of its work, paving, grading, guardrail, etc. in such a manner as to give rise to a situation which was imminently or inherently dangerous. This argument arose for the first time in opposition to the contractor's motion for summary judgment.

What is more, the contractor's affidavit stated that there was absolutely nothing dangerous about its installation of the guardrail and that the absence of median barriers and the amount, location and construction of the guardrail as specified in the project plans were consistent with other state highway projects with which Wright had been involved. There is no allegation or evidence that there were any prior similar incidents in that vicinity or on similar parts of the highway system which could arguably have put the contractor on notice of inherent peril in DOT's design and specifications.

Further, the photographs merely depicted what the area looked like more than two years after the mishap and eight-and-a-half years after Wright's . . . work was accepted by DOT. *Price v. Reeves Constr. Co.*, supra at 242.

This state of the record eliminates any jury question on the issue of Wright's negligence. Under the circumstances, where Wright could not be held liable as a matter of law for any alleged negligence, it was entitled to summary judgment.

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED JUNE 24, 1987 —
REHEARING DENIED JULY 9, 1987 — 

*Terry J. Marlowe, Hilliard P. Burt*, for appellant.
*Mark A. Gonnerman*, for appellee.